**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RHOADS INDUSTRIES, INC., et al. | : | NO. 15-921 |
| | : | |
| v. | : | |
| | : | |
| SHORELINE FOUNDATION, et al. | : | |
| RHOADS INDUSTRIES, INC., et al. | : | NO. 17-266 |
| | : | |
| v. | : | |
| | : | |
| TRITON MARINE CONSTRUCTION CORP. | : | |

**PLAINTIFFS' MEMORANDUM OF LAW ON DRY DOCK 2**
**AS A "SPECIAL USE" PROPERTY**

**I.     INTRODUCTION**

Plaintiffs Rhoads Industries and Rhoads Marine Industries ("Rhoads") explain below that Dry Dock 2 qualifies as a "special use" property because of its quasi-public ownership and location, and because it would be nearly impossible for Rhoads to replace. Rhoads will bear the burden of proving that Defendants' pile driving damaged its property and will prove the cost to repair. Defendants then must show a different cost to repair or prove that a market value cap on damages applies and the amount of market value. Rhoads would then be allowed to present its own market value evidence.

**II.    BRIEF STATEMENT OF RELEVANT FACTS**

Rhoads is a family-owned Philadelphia business founded in 1896. As a strategic partner to its clients, it provides industrial fabrication, installation, maintenance services, and manufacturing facilities for commercial and government projects. Rhoads operates out of its primary location at the Philadelphia Navy Yard, where its property includes Dry Dock 2 and Building 669. The land on which Dry Dock 2 and Building 669 sit is leased to Rhoads by the

1

Philadelphia Industrial Development Corporation (PIDC) on behalf of the Philadelphia Authority for Industrial Development (PAID), a public authority controlled by the City of Philadelphia. Also, on the leased property, Rhoads operates two, 50-ton cranes which move on rails surrounding Dry Dock 2 to allow Rhoads to work on dry-docked ships.

Defendants' pile driving on behalf of the U.S. Navy on property adjacent to that leased by Rhoads caused sinkholes on the leased premises, first in 2012-2013 and again in 2015, and damaged the Dry Dock and Building 669. The cost to repair the damages exceeds $12 million. Rhoads also suffered resulting economic losses in excess of $10 million.

### III. QUESTIONS PRESENTED

1. Does Dry Dock 2 qualify as "special use" or "special purpose" property?

2. Is determining "special use" or "special purpose" and, relatedly, the appropriate measure of damages, a question of both law and fact?

### IV. BRIEF ANSWERS

1. Yes; Under Pennsylvania law, Dry Dock 2 is special use or special purpose property because of its quasi-public character, its location, and the lack of alternative properties.

2. Yes; Under Pennsylvania law, determining whether a property is special use or special purpose and the appropriate measure of damages requires an analysis of both law and fact.

### V. ARGUMENT

#### A. Dry Dock 2 is a special use/special purpose property.

In reparable damage cases involving real property and associated structures, repair costs, capped by market value, constitute the general measure of damages. *Pa. Dep't of Gen. Servs. v. U.S. Mineral Prods. Co.*, 587 Pa. 236, 264, 898 A.2d 590, 607 (Pa. 2006) (*citing Lobozzo v. Adam Eidemiller, Inc.*, 437 Pa. at 361, 263 A.2d at 433 (Pa. 1970). However, where property is a "special use" property, Pennsylvania courts have embraced an exception to the market value

recovery cap. *Id.* For special use property, Pennsylvania law permits a complete cost-of-repair recovery even where the damage is permanent or where the cost of repair exceeds the market value of the property. Thus, where "construction costs may be the only reasonable indicator of value," a cost-of repair theory of damages is generally justified. *U.S. Mineral Prods., supra* 898 A.2d at 599; *see also Herring v. City of Jeannette*, Pa. Commw. LEXIS 182, **5, 47 A.3d 202, 205 (Pa. Commw. Ct. 2012).

In *U.S. Mineral Prods.*, the Commonwealth of Pennsylvania owned a 12-story building on the campus around the Capitol in Harrisburg. The building was damaged by fire and, as result of the fire, was contaminated by PCBs. Due to the contamination, the Commonwealth decided to tear down and replace the building. The Commonwealth sued, among others, Monsanto, which manufactured the PCBs, and won a $90 million verdict against Monsanto, which appealed. Monsanto contended on appeal that the proper measure of damages was diminution in market value, not the replacement cost sought by the Commonwealth. The Pennsylvania Supreme Court held that a special purpose property may not be amenable to a standard market value damages cap. *Id* at 597. The Court held that, in light of the unique attributes of the building, including its location on the Capitol campus and public use, the fact finder could find it to be a special purpose property. *Id* at n. 6.

While *U.S. Mineral Products* does not provide rules for how to analyze whether a property is special use property, it does provide guidance. First, the Court held that special purpose property may not be amenable to a conventional market value assessment and a different approach might be necessary to ensure that the injured party receives a fair measure of compensation for its injuries. *Id.* at 597. The Court noted, however, that special purpose valuation is not confined to situations where a market value determination is impossible. *Id.* at

3

598, n. 6.  Instead, the Court held that the building's public purposes and location on the Capitol campus "could fairly be deemed by the fact-finder to represent a special purpose property".  *Id.*  Beyond that, the Court gave no real guidance.

Similarly, the Pennsylvania Commonwealth Court permitted a cost-of-repair recovery where defendant drove his car into a bridge, causing it to collapse.  *Department of Transportation v. Estate of Crea*, 92 Pa. Commw. 242, 483 A.2d 996 (Pa. Commw. Ct. 1977).  The court reasoned that, because there is no market demand for property in the public domain, any attempt to determine the bridge's market value would be "wholly speculative, the very pitfall to be avoided in proof of damages." *Id.* at 1001.  The court found the lack of determinable commercial value dispositive in permitting the "reasonable cost of replacement" as the measure of damages. *Id.*

Here, Dry Dock 2 is a special use/special purpose property subject to a complete cost-of-repair recovery.  First, Dry Dock 2 is useful only for ship repair and maintenance.  It is not suited to, nor can it readily be repurposed for, other work.  Dry Dock 2's special use is reinforced by its location in the Navy Yard on the Delaware River, which is essential to Rhoads' business operations and permits Rhoads to service its customers' ships.  This is particularly so because the Navy is one of Rhoads major customers and proximity to the Navy's operations in the Navy Yard is very important.

Second, Dry Dock 2 is a special use/special purpose property because there are a limited number of comparable properties in the region.  Rhoads will prove that there are no available equivalent properties near the Navy Yard.  Rather, the "comparable" properties are in New York, New England, and Virginia.  These dry docks are too far away from Rhoads' base of operations

4

to be useful and replacing Dry Dock 2 with a dry dock in these states, assuming one were even available, is impractical.

Finally, Dry Dock 2 is owned by PAID, and supports local governmental interests such as providing employment.  Through PIDC, PAID "manages property and industrial sites *on behalf of* the City including property acquisition, improvement environmental remediation and/or sale." PAID Homepage, https://www.pidcphila.com/paid (last visited June 27, 2019) (emphasis added). As Dry Dock 2 is leased from PAID, which holds title to the property on behalf of the City of Philadelphia, it is a quasi-public property and purposed for specific, limited usage.  Rhoads will offer evidence at trial that PAID and PIDC consider the use to which the Navy Yard is put by prospective lessees in their leasing decisions.  For example, they will not lease to a tenant who will not make active use of the property.  That alone is sufficient to satisfy designation as a special use/special purpose property.  Therefore, because Dry Dock 2 is a special use/special purpose property, the cost-of-repair is the appropriate measure of damages.

In addition, based on *U.S. Mineral Products*, the issue of special use is a jury question.  The Court addressed the trial court's jury instructions that damages were to be measured by either its market value "or its special value to the plaintiff, whichever is greater". *Id.* at 597.  The Court had no issue with this being a jury question; the issue was whether the trial court properly charged the jury because the charge did not include any consideration of depreciation in calculating market value.  That this is a jury issue is supported by the Court's statement in note 6 that "the structure could fairly be deemed by a fact finder to represent a special-purpose property". *Id.*

**B.     Determining "special use" and the appropriate measure of damages is a question of law and fact and is for the jury to decide.**

Pennsylvania courts impose a "basic obligation on the part of those seeking to obtain compensation for property damage to establish that the repairs effectuated … are fairly attributable to the defendant's conduct, product, or instrumentality giving rise to the liability." *U.S. Mineral Prods.* at 607. "Generally, the plaintiff is obligated to establish the amount of damages using only one measure, although other measures may be applicable and even though a different measure of damages would yield a lesser award; it is the defendant's obligation to prove that a lesser amount than that claimed by plaintiff would sufficiently compensate for the loss." *Moyer v. White*, 48 Pa. D. & C.3d 487, 503 (1988) (*citing* 22 Am. Jur.2d § 402 at 489). "Where there are two possible measures of damages and plaintiff adopts one of them, it is incumbent on defendant to show that the other measure would be less expensive to him." *Id.* (*citing* 25A C.J.S. § 144(e) at 22).

In *Lobozzo*, defendant blaster appealed a judgment in a strict liability action based on the damage to plaintiff's building as a result of the blasting. Both plaintiff and defendant introduced conflicting expert opinions regarding the effect of blasting vibrations on plaintiff's property. *Id.*, at 436. As far as the amount of damages, and plaintiff proceeded on the theory that the damage was repairable, only plaintiff introduced witnesses who gave estimates of the cost of repairs. *Id.* The *Lobozzo* court saw no error in the jury accepting plaintiff's estimates because defendant introduced no testimony supporting a lower repair cost. *Id.*, at 437. The trial court had concluded that the value of the building exceeded the cost of repair, and the Supreme Court, without explanation, concluded the trial court was justified in so concluding. *Id.*

The initial burden to prove damages falls on Rhoads. Rhoads has already produced repair estimates by qualified experts attributing the damages to Defendants' pile-driving and the resultant sinkholes. Defendants can contest damages with their own experts and, if they contend

that market value caps damages, can introduce market value evidence. Rhoads is then entitled to introduce its own market value evidence.

The damages recovered by Rhoads may depend on whether its property is designated as special use. As stated above, Dry Dock 2 is a special use/special purpose property because of the work performed there and its location. This determination, however, is arrived at by considering applicable case law and attributes of the dry dock itself. Thus, it is a question of law and fact.

## VI. CONCLUSION

Under Pennsylvania law, Dry Dock 2 should be considered a special use or special purpose property due to its location, the work performed there, and the lack of comparable properties. If Defendants contest this fact, it is for the jury to decide. Rhoads, through its experts at the time of trial, will demonstrate its entitlement to the cost-of-repair damages it seeks.

Respectfully submitted,

**OFFIT KURMAN, P.C.**

Date: July 1, 2019         By: /s/ Jay M. Levin
                               Jay M. Levin (I.D. No. 34561)
                               Rebecca Prosper (I.D. No. 320300)
                               1801 Market Street, Suite 2300
                               Ten Penn Center
                               Philadelphia, PA 19103
                               Telephone: 267-338-1300
                               **Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

  I, Rebecca Prosper, hereby certify that on the 1st day of July 2019 a true and correct copy of Plaintiffs' Memorandum of Law on Dry Dock 2 As A "Special Use" Property was served via the ECF Court System to all counsel of record.

                     /s/ Rebecca Prosper

4824-0300-3035, v. 1